909 F.2d 554
 285 U.S.App.D.C. 315
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Alan HINTON, Appellant.
 No. 76-1014.
 United States Court of Appeals, District of Columbia Circuit.
 Aug. 6, 1990.
 
 Before BUCKLEY and STEPHEN F. WILLIAMS, Circuit Judges, and SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by this court that appellant's convictions be reversed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 In our prior opinion in this case,[1] we remanded the record to the District Court to make additional factual findings to assess the degree to which certain errors committed by appellant's trial counsel during a suppression, hearing might have prejudiced appellant's defense at trial. Having reviewed the District Court's findings,[2] we now conclude, in agreement with the district court, that appellant's defense was sufficiently prejudiced to require reversal of his convictions.
 
 
 5
 In brief,[3] appellant was convicted of several offenses in connection with an armed bank robbery.[4] The robbery was committed by four men wearing ski masks. Key witnesses to the crime who would later identify appellant as one of the robbers at trial were Ellen Hammeke and Beverly Emamali, customer service representatives who were positioned near the front door of the bank, and Hugh Smith, a teller. The three witnesses gave interviews to police and FBI agents the day of the robbery, and, a week later, they each individually selected Hinton as one of the robbers--the one toting a shotgun--from a photo array of eight photographs.
 
 
 6
 Prior to trial, appellant filed a motion to suppress the identification testimony of the three witnesses. The morning of the hearing on that motion, the prosecutor gave to the defendant's trial counsel Jencks Act materials consisting among other things of approximately sixty loose pages, including several FBI Form 302s recording the witnesses' interviews with FBI agents on the day of the robbery. Although the content of the Form 302s appeared to contradict portions of the identification testimony, and raise serious questions about the accuracy of the identifications, trial counsel did not request a recess to review the material, and so did not use its contents to impeach them. We agreed with the District Court that trial counsel's conduct in this regard amounted to ineffective assistance of counsel, especially in light of the importance of the prior identifications. We explained that:
 
 
 7
 The witnesses had had only brief glimpses of the suspects during the robbery, and all of the suspects had worn masks covering most of their faces. Further, there was a substantial question whether the witnesses had colored each others' memories during their discussions following the robbery. In an effort to determine the basis for the witnesses' selections, the court therefore, on its own initiative, asked the witnesses to provide any descriptions they had given to the police immediately after the robbery. When both Emamali and Smith stated that they had previously given the police descriptions resembling appellant, the court was able to discount, to that extent, the possibility that the composition of the photo array or its presentation was itself responsible for their selections. Furthermore, these uncontroverted prior descriptions bolstered the overall reliability of the witnesses identifications....[5]
 
 
 8
 Though having thus concluded that appellant had suffered ineffective assistance of counsel, we remanded for an inquiry into prejudice consistent with this court's then-recent pronouncements on prejudice, contained in two en banc decisions.[6]
 
 
 9
 On remand, having held an evidentiary hearing on the matter of prejudice, the District Court concluded that appellant "not only was likely prejudiced but prejudiced in fact by the failure of his trial counsel to utilize the Jencks Act statements of Emamali and Smith at the hearing on defendant's pretrial motion to suppress identification testimony."[7] The court also set forth related factual findings, among them that:
 
 
 10
 1. The Jencks Act 302 statements of government witnesses Emamali and Smith were material to the Court's ruling on defendant's motion to suppress the identification testimony of those witnesses. There is a reasonable basis for believing that, had trial counsel called those statements to the Court's attention, a contrary line of testimony and evidence would have resulted at the motions hearing for the Court's consideration in ruling on defendant's motion to suppress the identification testimony of Emamali and Smith.
 
 
 11
 2. If the Jencks Act 302 statements of Emamali and Smith had been disclosed at the motion hearing, it is most likely that the Court would have suppressed all identification testimony of the two witnesses.
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 7. Aside from the questionable and dubious identification testimony of Emamali and Smith a third witness, Ellen Hammeke, presented identification testimony. At best her testimony amounted to a "looks like" identification.
 
 
 16
 8. Beyond the identification testimony referred to in the above findings, Hinton relied upon an alibi, namely, that he was employed full-time at a gasoline station on the day and at the time of the robbery. His alibi was supported by time sheets and the testimony of his employer.
 
 
 17
 9. The conviction in this case was not based on hard, unimpeached, credible evidence, but rather, based on questionable identification testimony and uncertain strands of circumstantial evidence.[8]
 
 
 18
 Further, recognizing that while this case was still on remand the Supreme Court in Strickland v. Washington[9] defined the sort of prejudice a court must find before mandating reversal of a conviction due to ineffective assistance of counsel, the District Court stated that "this Court has considered Strickland and finds nothing in that opinion which would cause it in any way to depart from [its factual findings]."[10]
 
 
 19
 The government's primary contention is that the District Court applied an incorrect legal standard in reaching its conclusion that appellant was prejudiced by trial counsel's errors. It is true that the District Court's findings of fact are largely worded to harmonize with the out-dated prejudice standards of Wood and Decoster, rather than that of Strickland. Nonetheless, the District Court made clear its awareness of Strickland, and its findings demonstrate that the appellant's defense suffered the type of prejudice necessary to require reversal of his convictions under Strickland.
 
 
 20
 There the Court held that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] The Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."[12] Further, the Court counselled that:
 
 
 21
 In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.[13]
 
 
 22
 Undeniably, then, Strickland places the burden on appellant to establish a reasonable probability that he would have been acquitted had trial counsel acted properly.[14] In this case, such a task includes two steps; appellant must demonstrate a reasonable probability that the identification testimony would have been suppressed, and that he would have been acquitted as a result.
 
 
 23
 The District Court found that in the absence of trial counsel's errors, it "most likely" would have suppressed the identification testimony of Emamali and Smith.[15] The finding if valid completes step one. The government's sole attack here is that the district court can suppress an identification for suggestiveness in the process, but not for mere doubts as to reliability,[16] and that the Jencks material did not relate to suggestiveness. In fact, however, the two are interrelated. As our original opinion noted, if defense counsel had used the Jencks Act 302 statements to show that the witnesses gave conflicting descriptions of the robber to the police immediately after the robbery, the trial court would no doubt have been more receptive to a claim that the government's "composition of the photo array or its presentation" impermissibly harmonized the descriptions.[17]
 
 
 24
 As for the second step, the District Court found that the only other material identification testimony, that of Ellen Hammeke, was "[a]t best ... a 'looks like' identification," contradicted by Hinton's alibi evidence, and that the conviction was otherwise supported only by "uncertain strands of circumstantial evidence."[18] Thus, we cannot read the District Court otherwise than to have found a reasonable probability that appellant would have been acquitted had his motion to suppress been granted.
 
 
 25
 Nor do we credit the government's various challenges to the District Court's findings and conclusions. As they unavoidably implicate assessments of credibility and demeanor, the District Court's findings as to the reliability of an identification are entitled to "great weight,"[19] as are its determinations relating to the prejudicial effect of testimony erroneously permitted.[20] We agree with the district court that the identification testimony of Emamali and Smith "had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture...."[21] As appellant's convictions are otherwise only weakly supported by evidence in the record, they are
 
 
 26
 Reversed.
 
 
 
 [1]
 United States v. Hinton, 631 F.2d 769 (D.C.Cir.1980)
 
 
 [2]
 See United States v. Hinton, Cr. No. 75-0365 (D.D.C.) (memorandum opinion) (filed July 21, 1988) (Mem.Op.)
 
 
 [3]
 We only summarize the pertinent factual and procedural history, as they are recited in detail in our prior published opinion. See Hinton, 631 F.2d at 770-77
 
 
 [4]
 See id. at 770 n. 1
 
 
 [5]
 Hinton, 631 F.2d at 781-82
 
 
 [6]
 See United States v. Wood, 628 F.2d 554 (D.C.Cir.1980); United States v. Decoster, 624 F.2d 196 (D.C.Cir.1979). Under those rulings, a defendant was required to establish that the inadequacy of his representation resulted in " 'likely prejudice;' " that accomplished, the burden then shifted to the government to "prove 'beyond a reasonable doubt' that the constitutional deficiencies of counsel's representation were, in fact, harmless." Hinton, 631 F.2d at 782-83 (quoting United States v. Decoster)
 
 
 [7]
 Mem.Op. at 11
 
 
 [8]
 Id. at 11-12
 
 
 [9]
 466 U.S. 668 (1984)
 
 
 [10]
 Mem.Op. at 10
 
 
 [11]
 466 U.S. at 694
 
 
 [12]
 Id
 
 
 [13]
 Id. at 695-96
 
 
 [14]
 See, e.g., United States v. Debango, 780 F.2d 81, 85 (D.C.Cir.1986) (appellant must "establish a reasonable probability that he would have been acquitted had his trial counsel properly interviewed the proposed witnesses.")
 
 
 [15]
 See text accompanying note 7, supra
 
 
 [16]
 United States v. Hines, 455 F.2d 1317, 1331 (D.C.Cir.1972)
 
 
 [17]
 See Hinton, 631 F.2d at 782
 
 
 [18]
 See text at p. 4
 
 
 [19]
 United States v. Bubar, 567 F.2d 192, 198 (2nd Cir.1977) (citation omitted)
 
 
 [20]
 See, e.g., Debango, 780 F.2d at 85 ("because the District Court judge was able to hear appellant's original testimony and weigh his credibility, he was in the best position to evaluate whether appellant had been prejudiced by counsel's failure to interview Mills")
 
 
 [21]
 Strickland v. Washington, 466 U.S. at 695-96